IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRANDON HOWARD, | ) | |
| AIS #229852, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:17-CV-818-MHT |
| | ) | (WO) |
| | ) | |
| J. ANGLIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Brandon Howard, a state inmate.  In this complaint, Howard challenges the constitutionality of force used against him by correctional officers James Anglin, Maurice Womack, and Keith Edwards on October 12, 2017 in the B-Dorm barber shop at Ventress Correctional Facility. Doc. 1 at 3.  Howard sues the defendants in their individual and official capacities.  Doc. 1 at 1.  He seeks removal of the defendants from their employment as correctional officers and monetary damages for the alleged violation of his constitutional rights.  Doc. 1 at 4.

The defendants filed an answer, special report, amended answer and special report, and supporting evidentiary materials, including affidavits, certified prison documents and certified medical records, addressing Howard's excessive force claim.  In these documents, the defendants deny they acted in violation of Howard's constitutional rights or used any force against Howard.

After review of the defendants' special reports, the court issued an order directing Howard to file a response to the reports, including affidavits or statements made under penalty of perjury and other evidentiary materials.  Doc. 22 at 2.  The order specifically cautioned Howard that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff to file a response] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 22 at 2–3.

Howard filed a response and supporting documents in opposition to the defendants' reports on May 2, 2018.  Doc. 23.[1]  The response is supported by a statement made under oath and other evidentiary materials.  Doc. 23-1–Doc. 23-8.  Pursuant to the order requiring a response from Howard to the defendants' special reports, the court deems it appropriate to treat these reports as a motion for summary judgment.

Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and Howard's response to the reports, the undersigned concludes that the defendants' motion for summary judgment is due to be granted with respect to Howard's request for monetary damages from them in their official capacities.  The undersigned further concludes that the defendants'

---

[1] Howard advises that he sought notarization of his affidavit filed in support of the response but correctional officials refused him this service.  Doc. 23-8.

motion for summary judgment is due to be denied to the extent that Howard requests monetary damages from the defendants in their individual capacities and seeks prospective injunctive relief from them in their individual and official capacities.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beard v. Banks*, 548 U.S. 521, 529 (2006) (holding that court "must examine the record to see whether the [party moving for summary judgment], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated the absence of a genuine [dispute] of material fact, and his entitlement to judgment as a matter of law.") (internal citations and quotation marks omitted); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact). The movant may meet this burden by

presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

At this juncture, the court "must determine whether [Howard], the plaintiff, who bears the burden of persuasion has by affidavits or as otherwise provided in Rule 56 . . . *set forth specific facts showing that there is a genuine [dispute of material fact] for tria*l." *Beard*, 548 U.S. at 529 (internal citations and quotation marks omitted) (emphasis in original); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the plaintiff produces evidence that would allow a reasonable fact-finder to return a verdict in his favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v.*

*City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011). "[T]he judge's function [at the summary judgment stage] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The law requires the court, when making a determination on summary judgment, to accept as true "statements in [the plaintiff's] verified complaint, sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response." *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."); *Anderson*, 477 U.S. at 255 (holding that when deciding whether to grant summary judgment a court must draw "all justifiable inferences in [the plaintiff's] favor."). "That [a plaintiff's] evidence consists mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists. 'As a general principle, a plaintiff's testimony cannot be

discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning it relates facts that could not have possibly been observed or events that are contrary to the laws of nature.'" *Sears*, 922 F.3d at 1208 (quoting *Feliciano*, 707 F.3d at 1253.

The court has undertaken a thorough review of all the evidence contained in the record. The court finds that Howard, through the submission of his sworn complaint and statement under oath, has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force claim presented against the defendants for all relief sought from them in their individual capacities and for the prospective injunctive relief sought from them in their official capacities.[2]  The defendants, however, are entitled to summary judgment on Howard's claim for monetary damages against them in their official capacities.

## III.  DISCUSSION

### A.  Sovereign Immunity

To the extent that Howard brings claims against the defendants in their official capacities and seeks monetary damages, the defendants are entitled to sovereign immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

"[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]." *Alabama*

---

[2]"Even if [the plaintiff's] sworn statements turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact about the amount of force [the officer] used and whether [he] applied it in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sears*, 922 F.3d 1209 (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) and *Skrtich v. Thornton,* 280 F.3d 1295, 1303 (11th Cir. 2002)).

> *v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). There
> are two exceptions to this prohibition: where the state has waived its
> immunity or where Congress has abrogated that immunity. *Virginia Office
> for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 131 S.Ct. 1632, 1637–38,
> 179 L.Ed.2d 675 (2011). "A State's consent to suit must be 'unequivocally
> expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S.
> 277, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) (quoting *Pennhurst State
> Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67
> (1984)). "Waiver may not be implied." *Id*. Likewise, "Congress' intent to
> abrogate the States' immunity from suit must be obvious from 'a clear
> legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55,
> 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Vill.
> of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015). Thus, a state official

may not be sued in his official capacity unless the State has waived its Eleventh

Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,

100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*,

517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states
> that "the State of Alabama shall never be made a defendant in any court of
> law or equity." Ala. Const. art. I, § 14. The Supreme Court has recognized
> that this prohibits Alabama from waiving its immunity from suit. *Pugh,* 438
> U.S. at 782, 98 S.Ct. 3057 (citing Ala. Const. art. I, § 14.)

*Selensky*, 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment

immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751,

753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.

1990)). In light of the foregoing, the defendants are entitled to sovereign immunity under

the Eleventh Amendment from the request for monetary damages from them in their

official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d

1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are

protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B.  Relevant Facts[3]

According to plaintiff, on the evening of October 12, 2017, at Ventress Correctional Facility, officers James Anglin, Maurice Womack and Keith Edwards approached Howard in the B-Dorm barber shop when Anglin "punched [him] in the back of [his] head knocking [him] to the floor." Doc. 1 at 3.  Anglin, Womack and Edwards then proceeded to punch, kick and stomp Howard.  Doc. 1 at 3.  Howard states that he suffered "bruised ribs, back and stomach" as a result of the defendants' actions.  Doc. 1 at 3.

The following day, Lt. Lassiter escorted Howard to the health care unit for a medical evaluation.  There, Howard advised the attending nurse that he had been "beaten up by an officer (really two). . . .  They took turn[s] beat[ing] me side my head and took a broom stick [and] tried to shove it up my butt."  Doc. 16-6 at 16.  The  nurse examined Howard and prepared a body chart which contains the following information:

> There is no redness or bruise in head on [right] side that he stated that he was hit [there].  Some bruises in abdomen and back side and shoulder but not open wounds or broken bones or cuts only skinned knees. . . .

Doc. at 16-6 at 16.

---

[3]The facts are gleaned from the complaint. At this stage of the proceedings, the facts are viewed in a light most favorable to the plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (When addressing a party's motion for summary judgment, all evidence "must be viewed in the light most favorable to the opposing party."); *Anderson*, 477 U.S. at 255 (In ruling on a summary judgment motion, "all justifiable inferences [from the evidence] are due to be drawn in [the non-movant's] favor.").

Howard challenges the constitutionality of the force that he contends defendants Anglin, Womack and Edwards used against him.  He maintains that there was no need for the use of force and, therefore, the use of force against him was excessive.

## C.  Excessive Force

(i)  <u>Qualified Immunity</u>.  With respect to Howard's excessive force claim against the defendants in their individual capacities, defendants argue that they are entitled to qualified immunity. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted).

> Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.  *Skop* [*v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell* [*v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002).

*Bowden v. Stokely*, 576 F. App'x 951, 954–55 (11th Cir. 2014). "While . . . there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate. *See Skrtich*, 280 F.3d at 1301." *Bowden*, 576 F. App'x at 956. Accordingly, this court will consider whether the plaintiff's allegations that defendants Anglin, Womack and Edwards maliciously and sadistically used force against him, which the court must take as true for purposes of summary judgment, set forth a violation of his Eighth Amendment rights.

(ii)  <u>Excessive Force</u>.  Claims of excessive force by correctional officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [*Hudson*, 503 U.S.] at 7, 112 S.Ct. (1992). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley [v. Albers*, 475 U.S. 312, 321 (1986)]. The extent of injury may also provide some indication of the amount of force applied.

*Wilkins*, 559 U.S. at 37. "The relatively modest nature of [an inmate's] alleged injuries will

no doubt limit the damages he may recover [if ultimately successful]." *Id*. at 40.

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7–8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300–01; *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (In

determining whether officers used force maliciously and sadistically, a court must "look at

the need for the application of force; the relationship between the need and the amount of

force that was used; and the extent of the injury inflicted upon the prisoner[;] the extent of

the threat to the safety of staff and inmates, as reasonably perceived by the responsible

officials on the basis of the facts known to them, and any efforts made to temper the severity

of a forceful response. Not only that, but [a court] must also give a wide range of deference

to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.") (internal quotation marks and citations omitted).

> "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]"

*Wilkins*, 559 U.S. at 38.  Thus, in an excessive force case such as the one at hand,

> the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)."

*Bowden*, 576 F. App'x at 953. Consequently, the focus of this court in an "Eighth Amendment inquiry [as to excessive force] is on the nature of the force applied, not on the extent of the injury inflicted." *Sears*, 922 F.3d at 1205.

Howard alleges that on October 12, 2017 defendants Anglin, Womack and Edwards used excessive force against him. He contends that Anglin, Womack and Edwards, without reason or warning, pushed him to the floor and violently struck and kicked him.  Doc. 1 at 3. The defendants deny Howard's claim regarding the use of excessive force and claim that they did not use any force against Howard as alleged in the complaint. Doc. 16-2 at 1; Doc. 16-3 & Doc. 16-4.[4]

---

[4]The defendants assert that this court should ignore the facts set forth by the plaintiff in his verified complaint because, when he was initially examined by medical personnel, Howard advised that only two

Even though the defendants dispute the version of events presented by Howard, the court is required at this point in the proceedings to view the facts in the light most favorable to Howard and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). In that vein, Howard provides that the defendants undertook actions against him — i.e., threw him to the floor and repeatedly punched, struck and kicked him — without provocation and while he posed no threat to them or the security of the facility. Finally, Howard contends that the challenged actions caused him to suffer various injuries to his head, abdomen, back, ribs and knees. In sum, Howard contends "that he was the victim of an unprovoked attack in circumstances that did not [warrant the force used]." *Bowden*, 576 F. App'x at 954.

Viewing the facts in the light most favorable to Howard, as this court must do, the undersigned concludes that the defendants are not entitled to qualified immunity, as the plaintiff has alleged facts sufficient to survive the defendants' motion for summary judgment regarding the excessive force claim against them in their individual capacities for monetary damages and the request for prospective injunctive relief against them in both their individual and official capacities. Specifically, a disputed issue of material fact exists regarding the use of force. Consequently, the defendants' motion for summary judgment

---

officers had assaulted him and further alleged that these officers "took a broom stick [and] tried to shove it up my butt," Doc. 16-6 at 16—whereas, in the pleadings before the court, he avers that three officers were involved in the assault and does not reference the attempted sexual assault mentioned at his medical evaluation. The defendants also maintain that in his deposition Howard concedes that the attempted sexual assault did not occur. Doc. 16-9 at 21–24. Although this evidence may potentially be used by the defendants at the trial of this case to undermine Howard's credibility, the court finds that at this stage of the proceedings and under the circumstances of this case it must take the statements contained in Howard's verified complaint as true. Moreover, this court cannot rely on defense counsel's theory of "[w]hat likely happened[,]" Doc. 20 at 6, in making a determination with respect to summary judgment.

with respect to the claim of excessive force against them in their individual capacities for monetary damages and the request for prospective injunctive relief against them in both their individual and official capacities are due to be denied.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment as to the plaintiff's excessive force claim for monetary damages against them in their official capacities be GRANTED and this claim be DISMISSED with prejudice, as the defendants are entitled to sovereign immunity from such damages.

2.  The defendants' motion for summary judgment with respect to the plaintiff's excessive force claim seeking monetary damages from them in their individual capacities and prospective injunctive relief from them in both their individual and official capacities be DENIED.

3.  This case be set for trial on the plaintiff's surviving claim of excessive force against defendants Anglin, Womack and Edwards for monetary damages in their individual capacities and for prospective injunctive relief from them in both their individual and official capacities.

On or before **January 20, 2021**, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this the 5th day of January, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge